Robert K. Jones (State Bar #016228)
Monica M. Ryden (State Bar #023986)
**JACKSON LEWIS P.C.**
2398 East Camelback Road, Suite 1060
Phoenix, AZ  85016
Tel. (602) 714-7044
Fax (602) 714-7045
JonesR@jacksonlewis.com
Monica.Ryden@jacksonlewis.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Ricky   Woolstenhulme;   and   Michael Pickering,<br><br>           Plaintiffs,<br><br>       vs.<br><br>MasTec, Inc., a Delaware corporation; and EC Source, a wholly-owned subsidiary of MasTec, Inc.,<br><br>           Defendants. | Case No. 2:16-CV-03792-DLR<br><br>**ANSWER TO ORIGINAL COMPLAINT** |

Defendants MasTec, Inc. and EC Source ("Defendants"), by and through their counsel, answer Plaintiffs' Complaint ("Complaint") as set forth below.

Introduction

1.     Defendants deny the allegations in paragraph 1 of the Complaint.

2.     Defendants admit that MasTec issued a restatement of selected financial disclosures for part of 2014.  Defendants deny the remaining allegations in paragraph 2 of the Complaint.

3.     Defendants deny the allegations in paragraph 3 of the Complaint.

Jurisdiction and Venue

4.     Defendants lack information sufficient to admit or deny the date that Plaintiffs filed an OSHA Complaint, if any, and thereon deny such allegations but admit the remaining allegations of paragraph 4.

1

5.     Defendants lack information sufficient to admit or deny the legal conclusion in paragraph 5 of the Complaint that an Arizona resident may claim diversity jurisdiction against non-Arizona citizens, and thereon reserve objection.

6.     Defendants admit this Court has supplemental jurisdiction over Plaintiffs' state-law claims.

7.     Defendants admit that venue is proper in this Court. Defendants deny any remaining allegations in paragraph 7.

Parties

8.     Defendants admit paragraph 8, except the date of termination was November 6, 2015.

9.     Defendants admit paragraph 9, except the date of termination was November 6, 2015.

10.     Defendants admit paragraph 10.

11.     Defendants admit paragraph 11.

12.     Defendants lack information sufficient to admit or deny the legal conclusions stated in paragraph 12 of the Complaint and the intended meaning of the term "executives," and thereon deny such allegations until established at law. Defendants admit that (a) ECS is a wholly owned subsidiary of MasTec; and (b) because ECS is a wholly owned subsidiary of MasTec, Plaintiff's work for ECS inured to the benefit or detriment of MasTec.  Defendants deny any remaining allegations in paragraph 12.

Factual Allegations

13.     Defendants admit that in 2011 MasTec, Inc. acquired ECS and ECS's subsidiary, TDP, to enhance or expand its services in its electrical-transmission segment. Defendants deny the remaining allegations in paragraph 13.

14.     Defendants admit that TDP, upon authority from TDP President William Wright, hired Mr. Woolstenhulme in February 2012, and that his title changed to Senior Vice President in 2013.  Defendants admit that Mr. Woolstenhulme's representations

regarding his experience in EHV construction projects was a factor in that decision. Defendants lack information sufficient to admit or deny the remaining allegations in paragraph 14, and thereon deny such allegations.

15.    Defendants deny the allegations in paragraph 15 of the Complaint.

16.    Defendants admit that upon MasTec's acquisition of ECS, ECS and TDP became part of a publicly traded company that required certain financial information to be reported to shareholders.  Defendants deny the remaining allegations in paragraph 16 of the Complaint.

17.    Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit that Mr. Woolstenhulme, at times, had certain authority over aspects of the Electrical Transmission segment operations, which he may from time to time have considered an "operations group," although that term is undefined.  Defendants deny the remaining allegations in paragraph 17 of the Complaint.

18.    Defendants admit that Mr. Woolstenhulme approved the hire of Mr. Pickering as Director of Contracts and Internal Controls on or about April 8, 2013. Defendants admit that Mr. Pickering had certain authority over functions related to TDP controls that he may from time to time considered a "controls group," although that term is undefined. Defendants lack information sufficient to admit or deny the remaining allegations in paragraph 18, and thereon deny such allegations.

19.    Defendants deny the allegations in paragraph 19 of the Complaint.

20.    Defendants admit that it used the POC method, among other methods, for construction accounting, and disclosed this to the SEC.  Defendants aver that GAAP standards speak for themselves and deny Plaintiffs' allegations and interpretations to the extent inconsistent with such standards.  Defendants deny the remaining allegations in paragraph 20 of the Complaint.

21.    Defendants admit that PPL awarded TDP the "PPL Project" in 2012 on the terms stated in the contract documentation.  Defendants deny the remaining allegations

in paragraph 21 of the Complaint

22.    Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants further lack information sufficient to admit or deny what Woolstenhulme did or didn't do, or what he "determined," and thereon deny such allegations.  Defendants admit that TDP incurred certain costs on the PPL Project which PPL refused to pay. Defendants deny the remaining allegations in paragraph 22 of the Complaint.

23.    Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit that in August 2013, Mr. Woolstenhulme provided Mr. Wright with certain information and commentary on the PPL project and that Plaintiffs discussed the cost and revenue estimates for the PPL Project with Mr. Wright. Defendants deny the remaining allegations in paragraph 23 of the Complaint

24.    Defendants deny the allegations in paragraph 24 of the Complaint.

25.    Defendants admit that in September, 2013, PPL terminated its contract with TDP for convenience.  Defendants admit that TDP sued PPL to recover certain costs as a result, and that Plaintiffs were asked to assist with such litigation from time to time.  Defendants deny the remaining allegations in paragraph 25.

26.    Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit the first two sentences of paragraph 26. Defendants admit that Mr. Wright took no position on whether to revise cost estimates or POC analysis at that time. Defendants deny the remaining allegations in paragraph 26 of the Complaint.

27.    Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit that ECS was awarded the Mid-American project in 2013 and that Mr. Bratton obtained certain assistance from Mr. Wright in connection with the bid and budget, and discussed an increase in the project's profit estimate. Defendants deny the

remaining allegations in paragraph 27 of the Complaint.

28.    Defendants admit that the Mid-American project was delayed.  Defendants deny the remaining allegations in paragraph 28 of the Complaint.

29.    Defendants deny the allegations in paragraph 29 of the Complaint.

30.    Defendants admit that Mr. Woolstenhulme worked on the bid for the APS Project. Defendants deny the remaining allegations in paragraph 30 of the Complaint.

31.    Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit that Mr. Woolstenhulme was assigned to provide information to accounting personnel, which included WIP reports from time to time, for certain projects, and Mr. Pickering was given access to the Timberline software in or about October, 2013. Defendants deny the remaining allegations in paragraph 31 of the Complaint.

32.    Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' actions in preparing WIP reports, opinions or state of mind, and thereon deny such allegations.  Defendants deny any remaining allegations in paragraph 32.

33.    Defendants admit that on November 8, 2013, Ms. Golden circulated certain data to Mr. Wright, Mr. Bratton, Br. Woolstenhulme, Mr. Smaistrla, Ms. Golden and Ms. Glauner.  Defendants admit that Mr. Bratton responsive email referenced production curves versus budgets and the use of WIP reports on projects.  Defendants deny the remaining allegations in paragraph 33 of the Complaint, and specifically deny the last sentence and Plaintiffs' alleged interpretation of any statement by Mr. Bratton.

34.    Defendants admit that Mr. Woolstenhulme was assigned to provide information to accounting personnel, which included WIP reports from time to time, for the S2RB project towards the end of 2013.  Defendants deny the remaining allegations in paragraph 34 of the Complaint.

35.    Defendants deny the allegations in paragraph 35 of the Complaint.

36.     Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants deny the remaining allegations in paragraph 36 of the Complaint.

37.     Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit that in December 2013 Plaintiffs' employment shifted from TDP to ECS.   Plaintiffs Defendants deny the remaining allegations in paragraph 37 of the Complaint.

38.     Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit that ECS increased its cost at completion projections in the 3rd Quarter of 2014, but deny that it was done as a result of an alleged agreement between or among ECS executives.   Defendants deny the remaining allegations in paragraph 38 of the Complaint.

39.     Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit that Ms. Golden did not agree with Woolstenhulme's assessment of POC accounting, and likely made statements to that effect in or about the summer of 2014.  Defendants deny the remaining allegations in paragraph 39 of the Complaint.

40.     Defendants admit that Woolstenhulme sent the alleged email, which also stated that "there are no changes I can make that are relevant to actual project/construction progress," effectively removing himself from the accounting process.  Defendants deny the remaining allegations in paragraph 40 of the Complaint.

41.     Defendants deny the allegations in paragraph 41 of the Complaint.

42.     Defendants lack information sufficient to admit or deny allegations as to Plaintiffs' knowledge, opinions or state of mind, and thereon deny such allegations. Defendants admit that a reorganization had been underway for some time when it was

6

announced in September, 2014.  Defendants deny the remaining allegations in paragraph 42 of the Complaint.

43.     Defendants admit that Ms. Golden sent an email on October 6, 2014 that included the phrase "the information provided by those individuals has never been used."   Defendants admit that Pickering's access to Timberline was temporarily disrupted.  Defendants deny the remaining allegations in paragraph 43 of the Complaint.

44.     Defendants lack information sufficient to admit or deny allegations as to the Plaintiffs' knowledge, opinions or state of mind and thereon deny such allegations. Defendants admit that Mr. Pickering sent Mr. Woolstenhulme the alleged email on October 22, 2014, which Mr. Woolstenhulme forwarded to Alberto de Cardenas, but deny the underlying allegations in the emails or any reasonable good faith reason for sending such emails.  Defendants admit that Mr. de Cardenas asked Plaintiffs for more information.   Defendants deny the remaining allegations in paragraph 44 of the Complaint.

45.     Defendants lack information sufficient to admit or deny allegations as to the Plaintiffs' knowledge, opinions or state of mind and thereon deny such allegations. Defendants admit that Mr. Woolstenhulme sent the alleged email to Mr. de Cardenas on October 23, 2014, but deny the underlying allegations in the emails or any reasonable good faith reason for sending such an email.  Defendants further lack information sufficient to interpret Plaintiffs' use of the subjective terms "detailed" and "details," and thereon deny any allegations that depend on such interpretation.  Defendants admit that on October 27, 2014, Mr. de Cardenas and Associate General Counsel Virginia Pagliery spoke with Plaintiffs by telephone in response. Defendants deny the remaining allegations in paragraph 45.

46.     Defendants admit that on November 3, 2014, Mr. Roton sent each of the Plaintiffs an email with the subject line "Notification of Temporary Re-Assignment." The emails informed them they would remain full-time employees of ECS as "Senior

Members" of the PPL litigation team, working from home. Defendants deny the remaining allegations in paragraph 46 of the Complaint.

47.    Defendants admit that Plaintiffs reported the reassignment to Mr. de Cardenas, emailing him to say they thought the move was retaliatory. In an email the next day, Mr. de Cardenas responded that the reassignment was already in the works and that they were needed on the PPL litigation team. Defendants deny the remaining allegations in paragraph 47 of the Complaint.

48.    Defendants lack information sufficient to admit or deny what Woolstenhulme "discovered," and thereon deny such allegations and the inference that that he was "shorted" anything.  Defendants deny the allegations in paragraph 48 of the Complaint.

49.    Defendants admit that the Mesa office layout did not include a dedicated workspace for Plaintiffs, and that Plaintiffs were not "re-aligned" to report to Mr. Roton, but deny any remaining inferences and allegations in paragraph 49.

50.    Defendants admit that in January, 2015, Mr. Roton requested that Plaintiffs begin providing weekly summary of their business activities.  Defendants deny the remaining allegations in paragraph 50 of the Complaint.

51.    Defendants admit that Woolstenhulme sent Mr. de Cardenas an email on January 14, 2015 reporting that there was a new seating chart in Mesa that did not include Plaintiffs.  Defendants admit that Mr. de Cardenas responded that MasTec was taking their complaints seriously, had retained independent counsel to investigate and again invited Plaintiffs to provide any further documentation.  Defendants deny the remaining allegations in paragraph 51 of the Complaint.

52.    Defendants admit that Plaintiffs met with outside investigators hired by MasTec, but deny all other inferences and allegations in paragraph 52.

53.    Defendants admit that Mr. de Cardenas and Plaintiffs discussed possibilities for Plaintiffs' future roles with MasTec on January 28, 2015, but deny all other inferences and allegations in paragraph 53.

8

54. Defendants admit paragraph 54.

55. Defendants admit that by April 2015, Defendants had not received bonuses for 2014 and that 2014 bonuses were delayed. Defendants lack information sufficient to admit or deny what Mr. Pickering did on April 7, 2015, and thereon deny such allegations. Defendants admit that neither Plaintiff received a bonus for 2014. Defendants deny the remaining allegations in paragraph 55.

56. Defendants admit that in April 2015 the audit committee had determined to conduct an audit prior to filing MasTec's 2014 10K, that the audit team initially invited Mr. Woolstenhulme to meet with them, and eventually scheduled to meet with both Mr. Woolstenhulme and Mr. Pickering on May 19, 2015. Defendants lack information sufficient to admit or deny what or when Plaintiffs believed they "learned" anything or what Charles Niemeier said or did not say to Plaintiffs and thereon deny such allegations. Defendants deny that the audit was a direct response to any concerns raised by Plaintiffs. Defendants admit the remaining inferences in paragraph 56 of the Complaint.

57. Defendants lack information sufficient to admit or deny Plaintiffs' state of mind, "concerns," opinions or beliefs and thereon deny such allegations in the first sentence of paragraph 57, and further deny that Plaintiffs stated to Mr. de Cardenas that they requested counsel because they feared retaliation. Defendants admit the final two sentences of paragraph 57.

58. Defendants deny the allegations in paragraph 58 of the Complaint.

59. Defendants lack information sufficient to admit or deny the first sentence of paragraph 59 and thereon deny such allegations. Defendants admit the remaining allegations in paragraph 59 of the Complaint.

60. Defendants admit that Mr. Wright planned for weekly meetings with Plaintiffs, some of which did not occur. Defendants deny the remaining allegations in paragraph 60 of the Complaint.

61. Defendants lack information sufficient to admit or deny the allegations in paragraph 61 of the Complaint, and thereon deny such allegations.

62. Defendants admit that the weekly calls between Mr. Wright and Plaintiffs ceased after the PPL trial was underway and/or settled due to lack of necessity, but lack information sufficient to admit or deny if or how they became "cancelled," and thereon deny such allegations. Defendants admit that Plaintiffs never contacted their direct supervisor thereafter, but deny any remaining allegations or inferences in paragraph 62 of the Complaint.

63. Defendants lack information sufficient to admit or deny the allegations in paragraph 63 of the Complaint, and thereon deny such allegations.

64. Defendants lack information sufficient admit or deny what Plaintiffs "found" and thereon deny such allegations. Defendants admit that on November 5, Mark Cheskin, and attorney for MasTec contacted Mr. Godbolt by telephone and informed him Plaintiff's employment would be terminated, except that Plaintiffs' termination date was November 6, 2015.

**COUNT I**
**(RETALIATION IN VIOLATION OF THE SARBANES-OXLEY ACT,**
**18 U.S.C. § 1514A)**
**(By Both Plaintiffs Against All Defendants)**

65. Defendants' responses to paragraphs 1-64 incorporated by reference as if set forth fully herein.

66. Paragraph 66 is comprised entirely of legal conclusions to which no response is required. To the extent a response is required, Defendants state that the SOX Act speaks for itself and Defendants deny any allegation in paragraph 66 not supported by law.

67. Defendants admit MasTec is a publicly traded company. Defendants lack information sufficient to admit or deny the legal conclusions stated in Paragraph 67 of the Complaint, and thereon deny such allegations until established at law. As for joint employment, Defendants' response to paragraph 12 of the Complaint is incorporated herein.

68. Defendants admit that Plaintiffs were employees of Defendant ECS at times, but deny that Plaintiffs were employed by MasTec. Defendants' response to paragraph 12 of the Complaint is incorporated herein

69. Defendants lack information sufficient to admit or deny the legal conclusions stated in paragraph 69 of the Complaint, and thereon deny such allegations until established at law. Defendants deny that Plaintiffs reported any violation of the referenced statutes.

70. Defendants deny the allegations in paragraph 70 of the Complaint.

71. Defendants deny the allegations in paragraph 71 of the Complaint.

## COUNT II
### (RETALIATION IN VIOLATION OF THE DODD-FRANK ACT, 15 U.S.C. §78u-6(h))
### (By Both Plaintiffs Against All Defendants)

72. Defendants' responses to paragraphs 1-71 incorporated by reference as if set forth fully herein.

73. Paragraph 73 is comprised entirely of legal conclusions to which no response is required. To the extent a response is required, Defendants state that the Dodd-Frank Act speaks for itself and Defendants deny any allegation in paragraph 73 not supported by law.

74. Defendants admit that Plaintiffs were employees of Defendant ECS at times, but deny that Plaintiffs were employed by MasTec. As to joint employment, Defendants' response to paragraph 12 of the Complaint is incorporated herein.

75. Defendants lack information sufficient to admit or deny the legal conclusions stated in paragraph 75 of the Complaint, and thereon deny such allegations until established at law. Defendants deny that Plaintiffs reported any violation of the referenced statutes.

76. Defendants deny the allegations in paragraph 76 of the Complaint.

77. Defendants deny the allegations in paragraph 77 of the Complaint.

**COUNT III**
**(RETALIATION IN VIOLATION OF THE ARIZONA EMPLOYMENT**
**PROTECTION ACT, A.R.S. § 23-1501)**
**(By Both Plaintiffs Against All Defendants)**

78.    Defendants' responses to paragraphs 1-77 incorporated by reference as if set forth fully herein.

79.    Paragraph 79 is comprised entirely of legal conclusions to which no response is required.  To the extent a response is required, Defendants state that the Arizona Employment Protection Act speaks for itself and Defendants deny any allegation in paragraph 79 not supported by law.

80.    Defendants admit that Plaintiffs were employees of Defendant ECS but deny that Plaintiffs were employed by MasTec.  As for joint employment, Defendants' response to paragraph 12 of the Complaint is incorporated herein.

81.    Defendants lack information sufficient to admit or deny the legal conclusions stated in paragraph 81 of the Complaint, and thereon deny such allegations until established at law.  Defendants deny that Plaintiffs reported any violation of the referenced statutes.

82.    Defendants deny the allegations in paragraph 82 of the Complaint.

83.    Defendants deny the allegations in paragraph 83 of the Complaint.

84.    Defendants deny the allegations in paragraph 84 of the Complaint.

**COUNT IV**
**(RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE § 1102.5(b))**
**(By Plaintiff Pickering Against All Defendants)**

85.    Defendants' responses to paragraphs 1-84 incorporated by reference as if set forth fully herein.

86.    Paragraph 86 is comprised entirely of legal conclusions to which no response is required.  To the extent a response is required, Defendants state that California Labor Code § 1102.5(b) speaks for itself and Defendants deny any allegation in paragraph 86 not supported by law.

87.    Defendants admit that Plaintiff Pickering was an employee of ECS at times, but deny that Pickering was employed by MasTec.  As for joint employment, Defendants' response to paragraph 12 of the Complaint is incorporated herein.

88.    Defendants lack information sufficient to admit or deny the legal conclusions stated in paragraph 88 of the Complaint, and thereon deny such allegations until established at law.  Defendants deny that Plaintiffs reported any violation of the referenced statutes.

89.    Defendants deny the allegations in paragraph 89 of the Complaint.

90.    Defendants deny the allegations in paragraph 90 of the Complaint.

91.    Defendants deny the allegations in paragraph 91 of the Complaint.

**COUNT V**
**(RETALIATION IN VIOLATION OF CALIFORNIA COMMON LAW)**
**(By Plaintiff Pickering Against All Defendants)**

92.    Defendants' responses to paragraphs 1-91 incorporated by reference as if set forth fully herein.

93.    Paragraph 93 is comprised entirely of legal conclusions to which no response is required.  To the extent a response is required, Defendants state that California common law speaks for itself and Defendants deny any allegation in paragraph 93 not supported by law.

94.    Defendants admit that Plaintiffs were employees of Defendant ECS at times, but deny that Pickering was an employee of MasTec.  As for joint employment, Defendants' response to paragraph 12 of the Complaint is incorporated herein.

95.    Defendants lack information sufficient to admit or deny the legal conclusions stated in paragraph 95 of the Complaint, and thereon deny such allegations until established at law.  Defendants deny that Plaintiffs reported any violation of the referenced statutes.

96.    Defendants deny the allegations in paragraph 96 of the Complaint.

97.    Defendants deny the allegations in paragraph 97 of the Complaint.

98.    Defendants deny the allegations in paragraph 98 of the Complaint.

**GENERAL DENIAL**

Defendants generally and specifically deny each allegation not expressly admitted herein and further deny that Plaintiffs have been injured as alleged in the Complaint, or at all.

**AFFIRMATIVE AND OTHER SPECIAL DEFENSES[1]**

First: Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

Second: On information and belief, Plaintiffs' SOX claim is barred for failure to exhaust prerequisite remedies or failure to engage in legally protected activity.

Third: On information and belief, Plaintiff's Dodd-Frank Claim is barred due to failure to report illegal activity to the SEC.

Fourth: Plaintiffs' claims are barred due to Plaintiffs' failure to report, internally or externally, that the employer violated (or was about to violate) any law, thereby failing to engage in legally protected activity.

Fifth: Defendants had legitimate, non-retaliatory reasons for all actions alleged in the Complaint.

Sixth:  Upon information and belief, Plaintiffs have failed to mitigate their alleged damages.

Seventh: Plaintiffs' claims are duplicative and Plaintiff is not entitled to duplicate recovery on redundant legal theories.

Eighth: Plaintiff Pickering is not entitled to the protections of California law, as the alleged retaliatory acts occurred in Arizona, if at all, where he was employed.

Ninth: The Complaint and proofs fail to set forth a basis for an award of punitive damages or liquidated damages.

Tenth: Plaintiffs' claims are barred by the doctrines of waiver, estoppel and unclean hands.

Eleventh: Plaintiffs did not engage in protected activity because they were

---

[1] By pleading any matter as a defense, Defendants do not concede that either of them bears the burden of proof with regard to such matter.

14

acting/reporting within the scope of their job duties and/or had no reasonable or good faith belief of a violation of law.

Twelfth: Upon information and belief, some or all of Woolstenhulme's claims are barred by release or waiver.

Thirteenth: Plaintiffs' claims are barred or limited by the doctrine of after-acquired evidence.

Fourteenth: Plaintiffs' claims are barred by applicable statutes of limitation or other time limitations.

Fifteenth: Plaintiff Woolstenhulme is not entitled to protection under the Arizona Employment Protection Act based upon the allegations in the Complaint and/or other proofs due to the lack of legally protected activity.

Defendants reserve the right to assert additional affirmative or other special defenses should it become aware of additional defenses during the course of discovery.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants pray that the Court:

1.     Dismiss Plaintiffs' Complaint in its entirety with prejudice;

2.     Deny each and every demand, claim and prayer for relief contained in the Complaint;

3.     Award Defendants their reasonable attorneys' fees and costs in defending against this unmeritorious action to the extent permitted by law; and

4.     Grant such other and further relief as the court deems just and proper.

DATED this 22nd day of December, 2016.

**JACKSON LEWIS, P.C.**

By:     */s/ Robert K. Jones*
        Robert K. Jones
        Monica M. Ryden
        Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System, for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrant:

David J Marshall
Alexis Ronickher
Katz Marshall & Banks LLP
1718 Connecticut Ave. NW, 6th Fl.
Washington, DC 20009
Attorneys for Plaintiffs

Tod F Schleier
Schleier Law Offices PC
3101 N Central Ave., Ste. 1090
Phoenix, AZ 85012
Attorney for Plaintiffs

/s/*Debbie Mattatall*

4845-6529-6701, v. 5